UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
_____
                               )
CANGREJEROS DE SANTURCE BASEBALL )
CLUB, LLC, SANTURCE MERCHANDISING )
LLC, and THOMAS J. AXON,        )
                               )
                               )
                               )
             Plaintiffs,        )
                               )          CIVIL ACTION
        v.                      )          NO. 3:22-01341-WGY
                               )
LIGA DE BÉISBOL PROFESIONAL DE  )
PUERTO RICO, INC., CRIOLLOS     )
MANAGEMENT, INC., RA12, INC.,   )
INDIOS DE MAYAGÜEZ BASEBALL CLUB )
INC., GIGANTES DE CAROLINA      )
BASEBALL CLUB INC., LEONES DE   )
PONCE CF INC., IMPULSE SPORTS   )
ENTERTAINMENT CORPORATION, JUAN A. )
FLORES GALARZA, IN HIS CAPACITY )
AS PRESIDENT OF THE LIGA DE     )
BÉISBOL PROFESIONAL DE PUERTO RICO,)
INC., IN HIS PERSONAL           )
CAPACITY, AND AS A MEMBER OF THE )
CONJUGAL PARTNERSHIP            )
CONSTITUTED BETWEEN HIM AND HIS )
SPOUSE, AND THE CONJUGAL        )
PARTNERSHIP SO CONSTITUTED,     )
                               )
             Defendants.        )
_____)
```

YOUNG, D.J.[1]                              June 27, 2023

**MEMORANDUM & ORDER**

---

[1] Of the District of Massachusetts, sitting by designation.

I.    **INTRODUCTION**

The Court here boldly goes where no lower court has gone before.  Why?  The Supreme Court has said so.[2]  This Court applies the Supreme Court's much criticized[3] judicial exemption

---

[2] In Agostini v. Felton, the Supreme Court held the trial court "acted within its discretion in entertaining the motion with supporting allegations, but it was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent." Agostini v. Felton, 521 U.S. 203, 237-38, 117 S. Ct. 1997, 2017, 138 L. Ed. 2d 391 (1997). The Agostini Court also reaffirmed "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Id. (citing Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989) (Kennedy J.)).

[3] The baseball exemption is heavily criticized by courts, legal scholars, and commentators. See Nathaniel Grow, Defining the "Business of Baseball": A Proposed Framework for Determining the Scope of Professional Baseball's Antitrust Exemption, 44 U.C. Davis L. Rev. 557 (2010) ("This lack of consensus regarding the scope of the exemption is particularly problematic because MLB regularly finds itself embroiled in antitrust disputes. For example, in August 2009, trading card manufacturer Upper Deck threatened to file an antitrust suit against MLB following MLB's decision to grant rival card manufacturer Topps an exclusive trademark license . . . in 2007, Pennsylvania Senator Arlen Specter alleged that a proposed deal between MLB and DirecTV, under which the satellite television company would have received the exclusive rights to air MLB's "Extra Innings" broadcasting package, violated antitrust law. Meanwhile, MLB's restrictive territory allocation policies--a regular source of antitrust complaints against the league--were again at issue in December 2009 when the city attorney for San Francisco threatened to sue MLB after the league considered permitting the Oakland Athletics franchise to relocate to San Jose, territory assigned to the San Francisco Giants organization. Had any of these disputes resulted in litigation, the applicability of the baseball antitrust exemption would have been unclear under both the existing

to the Nation's antitrust laws to a Puerto Rican professional baseball venture NOT associated with Major League Baseball ("MLB").

The Plaintiffs, Cangrejeros de Santurce Baseball Club, LLC ("Cangrejeros LLC"), Santurce Merchandising LLC ("Santurce Merchandising"), and Thomas J.  Axon ("Axon"), collectively "The Plaintiffs," bring a seven count complaint against the Defendants, Liga de Béisbol Profesional de Puerto Rico, Inc. (the "League"), Criollos Management, Inc. (the "Criollos"), RA12, Inc. ("RA12"), Indios de Mayagüez Baseball Club Inc. (the "Indios"), Gigantes de Carolina Baseball Club Inc. (the "Gigantes"), Leones de Ponce CF Inc. (the "Leones"), Impulse Sports Entertainment Corporation ("Impulse Sports"), Juan A. Flores Galarza, in his capacity as president of the Liga de

---

judicial precedent and scholarly analysis."); Nostalgic Partners, LLC v. Off. of Comm'r of Baseball, No. 21-CV-10876 (ALC), 2022 WL 14963876, at *1 (S.D.N.Y. Oct. 26, 2022) ("Plaintiffs believe that the Supreme Court is poised to knock out the exemption, like a boxer waiting to launch a left hook after her opponent tosses out a torpid jab. It's possible. But until the Supreme Court or Congress takes action, the exemption survives; it shields MLB from Plaintiffs' lawsuit."); J. Gordon Hylton, Why Baseball's Antitrust Exemption Still Survives, 9 MARQ. SPORTS L.J. 391 (1999) ("Neither Congressional inertia nor the power of Organized Baseball can explain the persistence of this exemption."). The list goes on.

Béisbol Profesional de Puerto Rico, Inc., in his personal capacity ("Flores"), and as a member of the conjugal partnership constituted between him and his spouse, and the conjugal partnership so constituted ("Flores Conjugal Partnership") and collectively, "The Defendants."  All counts are listed and described below:

**(1) Count One** alleges Violations of Section 1 of the Sherman Act: Agreement Among the Defendants in Unreasonable Restraint of Competition;

**(2) Count Two** alleges Violations of Section 2 of the Sherman Act: Conspiracy or Combination to Monopolize, Monopolization, and Attempted Monopolization;

**(3) Count Three** alleges Violations of the Antitrust Law of Puerto Rico (P.R. Laws Ann. tit. 10, § 258): Agreement Among the Defendants in Unreasonable Restraint of Competition;

**(4) Count Four** alleges Violations of the Antitrust Law of Puerto Rico (P.R. Laws Ann. tit. 10, § 260): Conspiracy or Combination to Monopolize, Monopolization, and Attempted Monopolization;

**(5) Count Five** alleges Violations of Fair Competition, P.R. Laws Ann. tit. 10, § 259, and Article 1536 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 10801 and 10803;

**(6) Count Six** alleges Contracts in Prejudice of a Third Person;

**(7) Count Seven** alleges Violations of Civil Rights Act of 1871, 42 U.S.C. § 1983.

[4]

The Defendants first moved to dismiss the complaint for failure to state a claim, arguing that (1) the Plaintiffs are contractually bound to litigate their claims in the local courts of Puerto Rico, Def.'s Mot. Dismiss FSC ("Def's. Mot. FSC"), ECF No. 28 at 5, and (2) the Plaintiffs' action is barred by res judicata after the Plaintiffs lost their prior case filed in the local court of Puerto Rico.  Id. at 10.

The Defendants then moved to dismiss the complaint for lack of subject matter jurisdiction on the basis that the Plaintiffs' antitrust claims must be dismissed because the "business of baseball" is exempt from antitrust regulation, which would make the federal antitrust claims fail, thus giving this Court no subject matter jurisdiction to hear the case.  Def.'s Mot. Dismiss SMJ ("Def's. Mot. SMJ"), ECF No. 43 at 6-13.

Following the direction of the Supreme Court's baseball exemption, this Court allows the Defendants' motions to dismiss.

### A.    Procedural History

The Plaintiffs, Axon and Cangrejeros LLC, previously filed a suit against the League and its President, Mr. Juan A. Flores Galarza, seeking a preliminary and permanent injunction, and seeking declaratory relief in Puerto Rico with regards to his dismissal.  Axon v. Liga De Beisbol Professional de Puerto Rico, Inc., No. SJ-2022-CV-02802 (Super. Ct. P.R. May 5, 2022).  The

court dismissed the complaint, reasoning that "[we] must conclude that the process followed by the President of the League complied with the contractual due process of law established by the parties in the Constitution of the [LBPPR]." Id. at 12.

The Plaintiffs filed a complaint on July 18, 2022, Pl.'s Compl. & Demand Jury Trial ("Compl.") ECF No. 1 and bring the seven counts listed in the introduction.

The Defendants moved to dismiss this complaint for failure to state a claim on September 12, 2022, Def's. Mot. FSC, and then again on October 27, 2022 for lack of subject matter jurisdiction.  Def's. Mot. SMJ.

Def's. Mot. FSC was met with an opposition by the Plaintiffs filed on October 12, 2022, Pls.' Opp'n FSC, ECF No. 40.  Def's. Mot. SMJ was met with an opposition by the Plaintiffs filed on November 10, 2022, Pls.' Opp'n SMJ, ECF No. 49.  The Defendants filed a reply on December 2, 2022, Def.'s Reply SMJ, ECF No. 53.  On March 29, 2023, the Court heard argument on the motion to dismiss and took the matter under advisement.  See Electronic Clerk's Notes, ECF No. 79

**B.   Factual Background**

      **1.   Facts Alleged Relating to the Antirust Claims**

The Defendant, League, is "the only top-tier professional baseball league in Puerto Rico, currently consisting of six different franchise teams operated by separately owned investors who do not share profits and losses with each other." Compl. ¶ 1.  As well as competing on the field, the teams compete "for fans, in-person attendance, player talent, sponsorships, merchandise sales, radio, and streaming broadcast rights agreements." Id.

The Complaint challenges, under both federal and Puerto Rico antitrust laws, "concerted behavior in unreasonable restraint of trade through which the Defendants entered into an unlawful conspiracy to boycott and exclude the Plaintiffs from competing as participants in the relevant markets for investing in and operating top-tier professional baseball teams in Puerto Rico."  Id. ¶ 2

The prologue to this alleged behavior is the purchase of operating control of Cangrejeros de Santurce professional baseball team (the "Cangrejeros Franchise") by Axon in October 2019.  Axon became the sole owner and member on February 4, 2022.  Id. ¶ 3.  Axon went on to improve the "competitive success of the Cangrejeros Franchise through increased levels of investment and dynamic new ways to operate and promote the team in economic competition."  Id.  Axon's "procompetitive efforts to improve the quality of the Cangrejeros Franchise were met

with stiff resistance by the other teams in the League, who did
not want to have to face such enhanced economic competition."
Id. ¶ 5.  This resistance was allegedly characterized by a
"group boycott" and the "unlawful seizure of [the] Plaintiffs'
investor-operator interest in the Cangrejeros Franchise, which
was then resold to a different investor-operator, [the]
Defendant Impulse Sports Entertainment Corporation ('Impulse
Sports')."  Id.

This alleged collective boycott took the form of "unlawful
contracts, combinations, and/or conspiracies" that had the
effect of "unreasonably restraining competition and creating and
maintaining a monopoly for [the] Defendants in the relevant
markets for investing in and operating top-tier professional
baseball teams in Puerto Rico."  Id. ¶ 6.  This conduct led to
"significant antitrust injuries to [the] Plaintiffs in their
business and property."  Id.  These injuries are represented by
"the loss of [the] Plaintiffs' ability to derive competitive
value from the ticket sales, sponsorship, concessions,
merchandise, and radio and streaming broadcast rights of the
Cangrejeros Franchise, and the loss of the ability to compete in
the relevant markets through the operation of a professional
baseball team in Puerto Rico."  Id. ¶ 94.

> **2.  Facts Relating to Alleged Violations of the Civil
> Rights Act of 1871, 42 U.S.C. § 1983.**

The Plaintiffs allege the Defendants "conspired with one another and co-conspirator Romero Lugo, [the Mayor of San Juan] acting on behalf of the municipality of San Juan, to deprive Plaintiffs, without due process of law, of their property interests and rights, privileges, and immunities secured by the United States Constitution and laws of the United States under the color of government action by a municipality of Puerto Rico." Compl. ¶ 159.  Essentially, the conspiracy allegedly "deprived Axon and Cangrejeros LLC, without any due process or compensation, of their established property interest in being the investor-operator of the Cangrejeros Franchise and having control over the commercial exploitation of the team's various rights without affording them compensation or due process of law."  Id.  They did so to "accomplish the objective of San Juan to suppress requests by the Franchise for various improvements in its stadium, to suppress the proposal for a private investment in the stadium, and to eliminate the possibility that the team would move to another municipality in Puerto Rico." Id. ¶ 160.

## II.  ANALYSIS

The Defendants move to dismiss the complaint for lack of subject matter jurisdiction on three grounds.  First, the Plaintiffs' antitrust claims must be dismissed because the

"business of baseball" is exempt from antitrust regulation and
the Puerto Rico Professional Baseball League falls squarely
within the core of baseball's antitrust exemption.  Def's. Mot.
SMJ 6-10.  Second, the Defendants argue the Plaintiffs' state
claims are barred by the Supremacy Clause and the Commerce
Clause.  Id. at 13.  Finally, the Defendants argue that the
Plaintiffs' unfair competition law and tort claims fail as
matter of law.  Id. at 15-17.

A.  **Standard of Review**

As courts of limited jurisdiction, federal courts must
resolve questions related to their subject-matter jurisdiction
before addressing the merits of a case.  Destek Grp. v. State of
N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003).  The
party asserting jurisdiction has "the burden of demonstrating
the existence of federal jurisdiction."  Viqueira v. First Bank,
140 F.3d 12, 16 (1st Cir. 1998).  If it appears to the Court at
any time that it lacks the statutory or constitutional power to
adjudicate the case, it must dismiss the action, even in the
absence of a challenge from any party.  Arbaugh v. Y&H Corp.,
546 U.S. 500, 514, (2006); Nowak v. Ironworkers Local 6 Pension
Fund, 81 F.3d 1182, 1187 (2d Cir. 1996).

Federal Rule of Civil Procedure 12(b)(1) limns the
appropriate mechanism for challenging a court's subject-matter

jurisdiction.  Valentín v. Hosp. Bella Vista, 254 F.3d 358, 362
(1st Cir. 2001).  The rule serves as a "large umbrella,
overspreading a variety of different types of challenges to
subject-matter jurisdiction." Id. at 362-63.  A motion to
dismiss brought under Rule 12(b)(1) is subject to a similar
standard of review as a motion brought pursuant to Rule
12(b)(6).  Boada v. Autoridad de Carreteras y Transportación,
680 F. Supp. 2d 382, 384 (D.P.R. 2010) (citing Negrón-Gaztambide
v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994)).  The
district court "must credit the plaintiff's well-pled factual
allegations and draw all reasonable inferences in the
plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54
(1st Cir. 2010) (citing Hosp. Bella Vista, 254 F.3d at 363).
"[T]he Court's inquiry, however, is not necessarily limited to
the parties' pleadings, and may include whatever evidence has
been presented in the case." Fed. Deposit Ins. Corp. v. Caban-
Muñiz, 216 F. Supp. 3d 255, 257 (D.P.R. 2016) (citing Aversa v.
United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).

   **B. The Plaintiffs' Antitrust Claims Must Be Dismissed
      Because the "Business of Baseball" is Exempt From
      Antitrust Regulation.**

   The Defendants argue the Plaintiffs' antitrust claims must
be dismissed because the "business of baseball" is exempt from
antitrust regulation.  Def's. Mot. SMJ at 6-10.

The Plaintiffs oppose this motion on the basis that what they call "the MLB exemption" does not apply to this case.  They argue first that the anomalous MLB exemption must be narrowly construed and can only be applied to MLB and its affiliated minor leagues.  Pls.' Opp'n SMJ at 5-6.  Second, that the Defendants cannot invoke the MLB exemption as the league operates as an independent baseball league that is not a minor league affiliate of MLB.  Id. at 8-10.  Third, that the conduct alleged does not fall within the narrow confines of the "business of baseball," and finally, that the Defendants also cannot qualify for the MLB exemption because there is no showing that they have relied on the existence of the exemption.  Id. at 10-13.

### 1. The Puerto Rico Professional Baseball League Falls Squarely Within the Core of Baseball's Antitrust Exemption.

The Defendants start their argument by setting forth the 1922 Supreme Court decision that held that "the Clayton and Sherman Acts do not govern the business of baseball. Fed. Baseball Club, Inc. v. Nat'l League of Prof'l Baseball Clubs, 259 U.S. 200 (1922)."  Def.'s Mot. SMJ at 7.  The Defendants emphasize that the plaintiff in that case was "Federal Baseball, the last remaining club in the Federal League (and not Major League Baseball)."  Id.  They further continue to list the sustained holding in Supreme Court decisions, emphasizing "the

U.S. Supreme Court has repeatedly held that the antitrust exemption applies to the 'business of baseball.'" <u>Id.</u> at 10.

The Plaintiffs disagree on this crucial aspect and instead consider that "the exemption covers only MLB and its minor league affiliates and thus does not extend to the League or the Franchise Defendants." Pls.' Opp'n SMJ 5.

The Plaintiffs' and the Defendants' acknowledgement of the exemption differs first in their appellation of it. The Defendants name it throughout their motion and opposition as the "baseball antitrust exemption" while the Plaintiffs call it the "MLB exemption". Def's. Mot. FSC; Def.'s Mot. SMJ; Pls.' Opp'n FSC; Pls.' Opp'n SMJ. Words matter. As Holmes said, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." <u>Towne</u> v. <u>Eisner</u>, 245 U.S. 418, 425(1918). The Plaintiffs' naming is telling: their main argument is that the exemption applies to MLB and its minor leagues only, and "[b]ecause it is established that the MLB exemption can only be applied to MLB and its official minor league affiliates—and no other sports business—Defendants may not invoke it to protect their anticompetitive conduct here." Pls.' Opp'n SMJ 8. The Plaintiffs do not advance any cases to sustain their claim that the applicability of the clause only to MLB and its official

[13]

minor leagues is "established."  In fact, an exhaustive search throughout all federal courts in this country does not provide for a single case using the denomination "MLB exemption".

No federal courts have ever (before this case) expressly had to draw a distinction as to the applicability of this clause to professional leagues that are non-MLB or Minor League affiliates.  Thus, this analysis focuses on interpreting the language and semantics of the major Supreme Court cases that define this exemption.

In the famous 1972 case brought by baseball player Curt Flood, the Supreme Court named the exemption as follows: "The longstanding exemption of **professional baseball** from the antitrust laws, <u>Federal Baseball Club</u> v. <u>National League</u>, 259 U.S. 200 (1922); <u>Toolson</u> v. <u>New York Yankees, Inc.</u>, 346 U.S. 356 (1953) . . . ." <u>Flood</u> v. <u>Kuhn</u>, 407 U.S. 258 (1972) (emphasis added).

Its predecessor, the 1953 <u>Toolson</u> case heard by the same Court, affirmed its earlier ruling in <u>Federal Baseball Club of Baltimore</u> v. <u>National League of Professional Baseball Clubs</u>, 259 U.S. 200, holding: "[T]his Court held that the business of providing public baseball games for profit between **clubs of professional baseball players** was not within the scope of the federal antitrust laws."  346 U.S. 356, at 357 (emphasis added).

[14]

The wording is clear: the antitrust exemption applies to professional baseball.  Had the Cangrejeros team, a professional baseball team, and the Winter League been an amateur team, the non-applicability of the exemption could have been better supported.  Even with amateur baseball, however, the District Court of Puerto Rico has been hesitant on the non-applicability of the clause when amateur players were paid a salary:

> The only hesitation this Court has in a blanket application of the exemption is that the Supreme Court has expressly limited it to professional baseball, holding "we now specifically limit the rule there established [in Federal Baseball] to the facts there involved, i.e. the business of organized professional baseball." Radovich v. National Football League, 352 U.S. 445, 451-452 (1957). In addition, the First Circuit has construed Flood, the Supreme Court's most recent pronouncement on the exemption, as "holding that the longstanding judicially created exemption of professional baseball from the Sherman Act is an established 'aberration' in which Congress has acquiesced." Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1185 n.4 (1st Cir. 1994) (emphasis added).

> Although the Federation is allegedly an amateur organization, because its players are paid a salary as per the complaint, and because it is not clear that AA baseball is purely an amateur gig, the exemption for pro-ball may well be applicable. Having already determined that there is no subject matter jurisdiction under the Sherman Act, however, the Court declines to decide whether the exemption applies.

Melendez v. Federacion de Beisbol Aficionado de Puerto Rico, Civil No. 05-1040 (PG), 2005 WL 8213102, at *3 (D. P.R. Feb. 11, 2005) (Pèrez-Gimènez, J.).

In their complaint, the Plaintiffs leave no doubt as to the professional nature of the Cangrejeros team: "Defendant Liga de Béisbol Profesional de Puerto Rico, Inc., (the "League") is the only top-tier professional baseball league in Puerto Rico, currently consisting of six different franchise teams operated by separately owned investors who do not share profits and losses with each other."  Compl. ¶ 1.  "In October 2019, Axon, through Cangrejeros LLC, purchased operating control of the Cangrejeros de Santurce professional baseball team (the "Cangrejeros Franchise")."  Id. ¶ 3.  Thus, the baseball exemption is applicable to Cangrejeros de Santurce, a professional baseball team.

The Plaintiffs further argue that "[e]ven if the Court finds that the MLB exemption can be extended to the League and its members . . ., the conduct averred in the Complaint still falls outside of the 'business of baseball' to which the Supreme Court has limited the exemption," Pls.' Opp'n SMJ 10, and contend that "[h]ere, the anticompetitive conspiracy alleged does not involve conduct that is 'central' to operating a baseball league.  To the contrary, [the] Plaintiffs have alleged a conspiracy between the League, the Mayor of San Juan, and the Franchise Defendants for the anticompetitive purpose of suppressing competition by '[removing] Plaintiffs from operating the Cangrejeros Franchise.'"  Id. at 11 (citing Compl. ¶ 50).

[16]

The Defendants argue in turn that the alleged conspiracy falls within the "business of baseball" and sets forth several cases to support their argument.  They start by laying out that "the Supreme Court intended to exempt the business of baseball, not any particular facet of that business, from the federal antitrust laws." Charles O. Finley & Co., Inc. v. Kuhn, 569 F.2d 527, 541 (7th Cir. 1978).  They then turn to two cases alleging collusion, where the Supreme Court declined to hear challenges to the antitrust exemption.

In the first case, owners of buildings with rooftop views of a professional baseball team's field brought action against the team, alleging the team was engaging in anti-competitive behavior and had breached a contract with the building owners when they began construction that would block views of the baseball field from the buildings' rooftops. Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC, 87 F. Supp. 3d 874 (N.D. Ill. 2015).  The Rooftops argued that the baseball exemption did not apply to individual team franchises, and that if it did, the exemption did not apply here because the Rooftops' business was "not necessary to produce the game on the field." Id. at 884.  The Court laid out that "[t]he Rooftops' first contention that the baseball exemption is inapplicable to individual team franchises is unsupported by the relevant case law.  The Toolson defendants themselves included the New York

[17]

Yankees, the Cincinnati Baseball Club, and both the owner and general manager of the Cincinnati club." <u>Id.</u>  Further, the Court laid out that "[m]ore fundamentally, . . . the Rooftops' reading of the baseball exemption is overly narrow.  The exemption applies to the 'business of baseball' in general, not solely those aspects related to baseball's unique characteristics and needs." <u>Id.</u>

The second case was brought by scouts that argued that MLB was colluding to keep the scouts' salaries low because teams were agreeing to not hire scouts already employed by other teams.  <u>Wyckoff</u> v. <u>Office of the Comm'r of Baseball</u>, 211 F. Supp. 3d 615 (S.D.N.Y. 2016).  Citing a previous case involving the Chicago Cubs the <u>Wyckoff</u> Court observed:

> In that case, the court denied plaintiffs' application for a preliminary injunction on the grounds that the baseball exemption barred a challenge to the Chicago Cubs' alleged agreement with others to sell tickets to watch Cubs games from rooftops overlooking Wrigley Field. <u>Id.</u> at 884–85. In denying plaintiff's application, the court concluded that the leading Supreme Court cases broadly exempt the "business of baseball"—not discrete aspects of that business—from antitrust regulation. <u>Id.</u>

<u>Id.</u> at 625 (citing <u>Right Field Rooftops</u>, 87 F. Supp. 3d at 884-85).  Here, the Plaintiffs claims involve an alleged conspiracy involving an owner of a professional franchise that was dismissed under the League's regulations.  This involves the business of baseball.

The Plaintiffs argument that "[t]he alleged conspiracy has nothing to do with player rules, rules of the game, or any other League rule or bylaw that could even arguably fall within the 'business of baseball' as that term has been narrowly defined by the court to limit the scope of the MLB exemption," Pls.' Opp'n SMJ 12, is overly narrow, as was the Rooftop's reading of the exemption in the Right Field Rooftops case.

The Sherman Act baseball exemption applies to the LBPPR and the Cangrejeros team since they are a professional baseball team, and the antitrust claims arise in the context of the business of baseball.

The baseball exemption bars any federal antitrust claims issued from the complaint, leading to dismissal of count one and count two.  Count three, count four and count five, alleging state antitrust claims, are consequently dismissed based on the Supremacy Clause as the Supreme Court held in Flood "state antitrust regulation would conflict with federal policy and . . . national 'uniformity (is required) in any regulation of baseball.'" 407 U.S. at 284 (quoting Flood v. Kuhn, 316 F. Supp. 217, 280 (S.D.N.Y. 1970)).

This Court's subject matter jurisdiction over this case could thus only be exercised through count seven, which claims Violations of Civil Rights Act of 1871, 42 U.S.C. § 1983, and

could confer supplemental jurisdiction on count six, claiming
Contracts in Prejudice of a Third Person.

###    C. "Judge shopping ain't a thing here or anywhere else."[4]
The Plaintiffs' Claim of Violations of Civil Rights Act
of 1871, 42 U.S.C. § 1983 Must be Dismissed Under the
Doctrine of Res Judicata.

While the central element of this Complaint revolves around
the antitrust injuries that the Plaintiffs allegedly suffered,
this Court may also exercise its subject matter jurisdiction
through count seven alleging violations of Civil Rights Act of
1871, 42 U.S.C. § 1983.  The Plaintiffs' claim that the
Defendants "conspired with one another and co-conspirator Romero
Lugo, [the Mayor of San Juan] acting on behalf of the
municipality of San Juan, to deprive Plaintiffs, without due
process of law, of their property interests and rights,
privileges, and immunities secured by the United States
Constitution and laws of the United States under the color of
government action by a municipality of Puerto Rico," Compl. ¶
159, and "deprived Axon and Cangrejeros LLC, without any due
process or compensation, of their established property interest
in being the investor-operator of the Cangrejeros Franchise and
having control over the commercial exploitation of the team's

---

[4] <u>Blue Sphere, Inc.</u> v. <u>Individuals, Corporations, etc.</u> Civil
Action No. 22-cv-5599, Jan. 18, 2023, transcript at 7 (N.D.Ill.
2023)(Seager, J.).

various rights without affording them compensation or due process of law." Id.  They did so to "accomplish the objective of San Juan to suppress requests by the Franchise for various improvements in its stadium, to suppress the proposal for a private investment in the stadium, and to eliminate the possibility that the team would move to another municipality in Puerto Rico." Id. ¶ 160.

In their motion to dismiss for failure to state a claim, the Defendants argued that "Plaintiffs' action is barred by Res Judicata after [P]laintiffs lost their prior case filed in the local court of Puerto Rico."  Def's. Mot. FSC 10.  This Court is therefore "called upon to determine the preclusive effect of a judgment entered by the Puerto Rico Court of First Instance[, and] Puerto Rico law supplies the rule of decision."  R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182-83 (1st Cir. 2006) (citing Pérez-Guzmán v. Gracia, 346 F.3d 229, 233-234 (1st Cir. 2003)).

The doctrine of res judicata in Puerto Rico is inscribed in the Civil Code:

> In order that the presumption of res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

P.R. Laws Ann. tit. 31, § 3343.  Thus, "a party asserting a res judicata defense under Puerto Rico law must establish three elements: (i) the existence of a prior judgment on the merits that is 'final and unappealable'; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted." R.G. Fin. Corp., 446 F.3d at 183 (citing Boateng v. InterAm. Univ., Inc., 210 F.3d 56, 61–62 (1st Cir. 2000)).

### 1. The Prior Judgment

The Defendants point out that "[o]n May 5, 2022, the San Juan Superior Court issued its Final Judgment," Def's. Mot. FSC 4, and that this is a final judgement because "[s]ince May 23, 2022, to today, [P]laintiffs never sought review or other relief from the San Juan Superior Court's judgment, which is now firm and final." Id. at 5.

The Supreme Court has held that "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83 (1984) (citing Allen v. McCurry, 449 U.S. 90, 96 (1980)). Consequently, if perfect identity of the thing or cause between

both actions is established, the State Court Judgement will
preclude this claim.

### 2. **The Perfect Identity of Thing or Cause Between Both Actions**

"A prior and current action will share a perfect identity
of thing if they involve the same object or matter and will
share a perfect identity of cause if they flow from the same
principal ground or origin or, put another way, if they derive
from a common nucleus of operative facts." Universal Ins. Co.
v. Office of the Ins. Comm'r, 755 F.3d 34, 38 (1st Cir. 2014)
(citing García-Monagas v. De Arellano, 674 F.3d 45, 51 (1st Cir.
2012)). The Defendants argue that "[b]oth the prior local court
case as well as this case arise because of Axon's suspension
from the LBPPR". Def.'s Mot. FSC 11. They conclude their
argument by stating that "[w]hile it could be argued that both
cases are based on the same set of facts, at the very least both
cases derive from a common nucleus of operative facts." Id.

The Plaintiffs argue that "[e]ven a cursory comparison of
the claims in the narrow Superior Court Action to the very
different claims in the instant action makes it evident that
'broader and more far-reaching' conduct has been alleged here."
Pls.' Opp'n FSC 13 (citing Walsh v. Int'l Longshoremen's Ass'n.,
630 F.2d 864, 873 (1st Cir. 1980)). They consider the Superior
Court Action to be "a simple breach of contract action

[23]

challenging, as a violation of the League's Constitution, the League's imposition of a two-year suspension and a $5,000 fine on Axon," id., while describing the current action as "a wide-ranging case bringing federal antitrust and civil rights conspiracy claims, as well as Puerto Rico unfair competition and antitrust claims, that were not in any way presented in the Superior Court Action."   Id. at 13-14.

The Plaintiffs conflate similarity of cases and similarity of claims.  This Court does not have to consider the preclusive effect of the Superior Court Judgement on the entire case brought before it, but the preclusive effect on the cause of action that bears "perfect identity" of thing or cause between actions.  See P.R. Laws Ann. tit. 31, § 3343.

Turning to the complaint, and focusing solely on the claim of Violations of Civil Rights Act of 1871, 42 U.S.C. § 1983, the Plaintiffs allege that the "Defendants' conspiracy, with the participation of the mayor of San Juan acting on behalf of the municipality, deprived Axon and Cangrejeros LLC, without any due process or compensation, of their established property interest in being the investor-operator of the Cangrejeros Franchise and having control over the commercial exploitation of the team's various rights without affording them compensation or due process of law." Compl. ¶ 159.  Essentially, this deprivation of the "property interest in being the investor-operator of the

[24]

Cangrejeros Franchise" takes the form of Axon's suspension from
his role, the same grievance at the center of the action brought
to the Superior Court, and for which the court concluded that
such suspension was in compliance with "the contractual due
process of the law established by the parties in the
Constitution of the Professional Baseball League."  <u>Axon</u> v. <u>Liga</u>
<u>De Beisbol Professional de Puerto Rico, Inc.</u>, NO. SJ-2022-CV-
02802 at 12.

In the Superior Court Judgment, the Court itself compared,
in Nostradamus fashion, the contractual due process case brought
before it with a potential constitutional due process claim had
there been a state actor involved:

> The Court must express, first, that the Professional
> Baseball League is a private entity. As it is well
> known, unless a private entity is an actor of the
> state, rights such as the constitutional due process
> of the law cannot be claimed against it. In such
> cases, the Supreme Court has reiterated that
> contractual due process of the law is what applies.
> This essentially means that if the parties established
> by contract a specific procedure to sanction one of
> the parties, the procedure established by contract
> must be followed. This makes sense because the
> doctrine of <u>pacta sunt servanda</u> applies. However, in
> this case, the Court must analyze whether the
> procedure to impose sanctions that the President of
> the Professional Baseball League carried out against
> Mr. Axon is the correct one, pursuant to the contract
> between the parties.

<u>Id.</u> at 10

At the heart of both claims lies Axon's suspension and then
termination by the Professional Baseball League.  After failing

in State Court, under the theory of contractual due process, the Plaintiffs attempt to bring the same claim again under a different theory by adding the Mayor, a state actor, to their complaint.

This Court agrees that at the very least, both claims derive from a common nucleus of operative facts.  It is satisfied that the perfect identity of thing or cause between both actions is present here.

### 3. Identity of the Parties

The Plaintiffs argue first "it cannot be disputed that the parties involved in this action are not identical to the parties in the Superior Court Action. In total, there are six new Defendants in this action (Criollos Management, Inc., RA12, Inc., Indios de Mayaguez Baseball Club Inc., Gigantes de Carolina Baseball Club Inc., Leones De Ponce CF Inc. and Impulse Sports) as well as a new Plaintiff (Santurce Merchandising LLC) who were not parties to the Superior Court Action."  Pls.' Opp'n FSC 15.  Second, they argue that "Defendants have made no attempt to show that any of the new Defendants in this action were in privity with any of the parties in the prior action." Id.

The Plaintiffs, however, fail to recognize that "under Puerto Rico law, the addition of new defendants to the federal claim does not destroy the defendants' ability to raise the res

[26]

judicata defense." Rivera-Feliciano v. State Ins. Fund Corp.,
652 F. Supp. 2d 170, 181 (D.P.R. 2009) (Pérez-Giménez, J.)
(citing Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 29
(1st Cir. 1998)).  In another case, the same argument made by
plaintiffs was met with the same response: "Plaintiffs point out
that the present action contains new parties that were not
parties in the Commonwealth Court action.  Nevertheless, the
defense of *res judicata* is applied even when the named parties
are different, as long as the real parties in interest are
identical." Lugo Rodriguez v. Puerto Rico Inst. of Culture, 221
F. Supp. 2d 229, 238 (D.P.R. 2002) (Garcia-Gregory, J.), aff'd,
98 F. App'x 15 (1st Cir. 2004) (citing Arecibo Radio Corp. v.
Commonwealth, 825 F.2d 589, 591 (1st Cir. 1987)).

! Here, the real parties of interest in the Civil Rights Act
Claim, triggered by Axon's suspension, are Axon and CSBC, who
filed the action in the Commonwealth Court and in this Court
against the unlawful conduct of LBPPR and Flores in his official
capacity as President of the League and his personal capacity.

    Plaintiffs fail to demonstrate that res judicata cannot
apply.  The Civil Rights Act claim stands alone and is not
intertwined with the antitrust claims.  This Court is satisfied
that the Commonwealth Judgment precludes the federal claim
through the doctrine of res judicata.

### III. CONCLUSION

Over 100 years ago, and again 50 years ago, the Supreme Court declined to intervene in what it considered to be a congressional responsibility.  "[T]he Court said in <u>Federal Baseball</u> in 1922 and what it said in <u>Toolson</u> in 1953, we say again here in 1972: the remedy, if any is indicated, is for congressional, and not judicial, action."  <u>Flood</u>, 407 U.S. at 285.  The Supreme Court also said that "[Congress] by its positive inaction, has allowed those decisions to stand for so long and, far beyond mere inference and implication, has clearly evinced a desire not to disapprove them legislatively."  <u>Id.</u>

Decades after acknowledging that these decisions have stood for "so long," it is now apparent that a congressional intervention is unlikely.  The Supreme Court may well need to take responsibility itself, or risk issuing the same decision in a century.  Until then, district courts have no other choice but to apply the antitrust exemption to Professional Baseball.

This Court does not have jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 because the claims are exempt from Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 & 26), Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 & 2), and 42 U.S.C. §§ 1983 & 1988 because of the professional baseball antitrust exemption.

Therefore, this Court does not have supplemental jurisdiction over the claims arising under the Puerto Rico antitrust law, P.R. Laws Ann. tit. 10, § 257, et seq., for violations of the Puerto Rico Fair Competition Law, P.R. Laws Ann. tit. 10, § 259, based on the Supremacy Clause.

The Civil Rights Act Claim is precluded by a prior judgement through the doctrine of res judicata and the Court declines to exercise supplemental authority on the state claim of Contracts in Prejudice of a Third Party under the Puerto Rico General Tort Statute, P.R. Laws Ann. tit. 31, § 10801.

This Court **GRANTS** the Defendants' motion to dismiss for lack of subject matter jurisdiction, ECF No. 43, with regard to the federal antitrust claims.  This Court **GRANTS** the Defendants' motion to dismiss for failure to state a claim, ECF No. 28, regarding the Civil Rights Act Claim through the doctrine of res judicata.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.