UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CANGREJEROS DE SANTURCE BASEBALL CLUB, LLC, SANTURCE MERCHANDISING, LLC, THOMAS J. AXON,<br><br>Plaintiffs,<br><br>v.<br><br>LIGA DE BÉISBOL PROFESIONAL DE PUERTO RICO, INC., CRIOLLOS MANAGEMENT, INC., RA12, INC., INDIOS DE MAYAGÜEZ BASEBALL CLUB INC., GDC BASEBALL INC., PONCE SPORTS AND ENTERTAINMENT CORP., IMPULSE SPORTS ENTERTAINMENT CORPORATION, JUAN A. FLORES GALARZA, IN HIS CAPACITY AS PRESIDENT OF THE LIGA DE BÉISBOL PROFESIONAL DE PUERTO RICO, INC., IN HIS PERSONAL CAPACITY, AND AS A MEMBER OF THE CONJUGAL PARTNERSHIP BETWEEN HIM AND HIS SPOUSE, AND THE CONJUGAL PARTNERSHIP SO CONSTITUTED,<br><br>Defendants. | ) | CIVIL ACTION<br>NO. 22-01341-WGY |

YOUNG, D.J.[1] November 24, 2026

**MEMORANDUM & ORDER**

[1] Of the District of Massachusetts, sitting by designation.

# I. INTRODUCTION

Cangrejeros de Santurce Baseball Club, LLC, Santurce Merchandising, LLC, and Thomas J. Axon (collectively, the "Plaintiffs") bring this action against Liga de Béisbol Profesional de Puerto Rico, Inc. (the "League"), Criollos Management, Inc., RA12, Inc., Indios de Mayagüez Baseball Club Inc., GDC Baseball Inc., Ponce Sports and Entertainment Corp., Impulse Sports Entertainment Corporation, and Juan A. Flores Galarza, (collectively, the "Defendants") for violation of the United States Code Title 42, Section 1987 ("Section 1987"), fair competition, and anti-trust. See Second Amend. Compl., ECF No. 162.

The central issue here is the mandate rule and whether the second amended complaint alleges facts such that applying Puerto Rico antitrust law would impermissibly burden interstate commerce. Counts III-VII are solely at issue here, because the First Circuit affirmed the Court's dismissal as to counts I-II. For the following reasons, the Court DENIES the League's motion for judgment on the pleadings, ECF No. 144, in its entirety as to the remaining counts (counts III-VII).

## A. Factual Background

This case arises out of an alleged conspiracy between the Mayor of San Juan, a non-defendant co-conspirator, and a variety

of organizations and individuals involved with the League. See Second Amend. Compl. ¶ 23. Count VII, the sole federal claim, is a Section 1983 claim. See id. ¶¶ 158-165. In July 2025, the First Circuit reversed this Court's ruling that Count VII was barred on res judicata grounds. See Cangrejeros de Santurce Baseball Club, LLC v. Liga de Béisbol Profesional de P.R., Inc., 146 F.4th 1, 24 (1st Cir. 2025). The First Circuit's review of the Section 1983 claim was otherwise limited to the res judicata issue.

The First Circuit also "remand[ed] so that the District Court [might] consider whether th[e] [Puerto Rico anti-trust] claims are precluded by the Commerce Clause," directing that this Court "may consider the parties' arguments as to this issue, as well as any issues of waiver." Id. at 23. On March 12, 2026, the Defendants filed a renewed motion to dismiss on the forum selection clauses, which this Court denied pursuant to the mandate rule. See Cangrejeros de Santurce Baseball Club, LLC v. Liga de Béisbol Profesional de P.R., Inc., 2026 U.S. Dist. LEXIS 52819, *6.

### B. Procedural History

The League filed the instant motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing for the dismissal of all claims in the second

amended complaint on new grounds. Mot. for J. Plead., ECF No. 144.[2]

The Plaintiffs opposed the motion, Opp'n, ECF No. 155, to which the League replied, Reply to Opp'n, ECF No. 163.

## II. ANALYSIS

### A. Standard of Review

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole," including any answer filed by a defendant. See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). A court may enter a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Id. at 54.

[2] The motion for judgment on the pleadings refers to the first amended complaint, but the operative document is the second amended complaint. See Second Amend. Compl. The difference between the two complaints is a party name change.

**B. The Mandate Rule**

The First Circuit holds that the mandate rule "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." United States v. Cheveres-Morales, 83 F.4th 34, 40 (1st Cir. 2023) (quoting United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004)). The First Circuit could not be more clear in its command to the district courts in this circuit: "[p]ut bluntly, 'the mandate rule requires that the trial court conform with the directions of the appellate court on remand.'" Id. (quoting United States v. Dávila-Félix, 763 F.3d 105, 109 (1st Cir. 2014)). To be sure, "mandates require respect for what the higher court decided, not for what it did not decide." de Jesus-Mangual v. Rodriguez, 383 F.3d 1, 6 (1st Cir. 2004) (quoting Biggins v. Hazen Paper, 111 F.3d 205, 209 (1st Cir. 1997)). In "seeking to determine the scope of remand [this Court] must . . . consider carefully 'both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" Dávila-Félix, 763 F.3d at 109 (quoting United States v. Genao-Sanchez, 525 F.3d 67, 70 (1st Cir. 2008)).

The mandate rule is not "designed to function as a straitjacket," United States v. Connell, 6 F.3d 27, 31 (1st Cir. 1993), and in narrowly tailored exceptional circumstances this

Court has some flexibility. See United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993). The "'exceptional circumstances' that must be present to overcome the mandate rule . . . [include] a showing of a change in controlling legal authority, significant new evidence not previously obtainable, or the prospect of serious injustice." United States v. Carta, 690 F.3d 1, 5 (1st Cir. 2012) (citing United States v. Wallace, 573 F.3d 82, 89 (1st Cir. 2009)).

The League names a number of new arguments as to why the pleadings fail as matter of law in their 12(c) motion. The League correctly recite the standard: "[a] 12(c) motion is assessed under the same plausibility framework that governs Rule 12(b)(6)." Mot. J. Plead. at 4; see also Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006) ("[w]e view the facts contained in the pleadings in the light most flattering to the nonmovants . . . and draw all reasonable inferences therefrom in their favor."). There is a modest difference between Rule 12(c) and Rule 12(b)(6) motions. See Aponte-Torres, 445 F.3d at 54-55. A Rule 12(c) motion implicates the pleadings as a whole. See id. That distinction, however, is of no difference here.

On appeal, the League did not cross-appeal or argue the alternate bases for dismissal found in the instant motion. The First Circuit specifically reversed this Court's grant of a

motion to dismiss the Section 1983 and state claims. In doing so, it directed that this Court "may consider the parties' arguments as to [the Commerce Clause], as well as any issues of waiver." Cangrejeros de Santurce Baseball Club, LLC, 146 F.4th at 23. This explicit mandate makes it unlikely that the First Circuit intended this Court to reopen analysis of the plausibility of the pleadings on the remaining counts. This Court thus DENIES the League's motion for judgment on the pleadings as to counts V, VI, and VII.

### C. The Dormant Commerce Clause

The First Circuit rejected this Court's analysis that:

> "[t]he baseball exemption bars any federal antitrust claims issued from the complaint . . . ." [The District Court] then went on to conclude that the claims "are consequently dismissed based on the Supremacy Clause as the Supreme Court held in Flood [that] 'state antitrust regulation would conflict with federal policy and . . . "national uniformity (is required) in any regulation of baseball."'" [Flood v. Kuhn, 407 U.S. 258, 284][(quoting Flood v. Kuhn, 316 F. Supp. 217, 280 (S.D.N.Y. 1970))].

Cangrejeros de Santurce Baseball Club, LLC, 146 F.4th at 23. The First Circuit did, however, mandate that the Court consider whether applying Puerto Rico's antitrust laws to the League would impermissibly burden interstate commerce pursuant to the Commerce Clause, thus precluding counts III and IV. See id.

The League argues that the interstate and international conduct alleged in the second amended complaint is sufficient to show that the Puerto Rico antitrust counts seek to impose local antitrust regulation on conduct whose effects are not confined to Puerto Rico. See Mot. J. Plead. at 9. The Plaintiffs argue that the dispositive analysis is the location of the teams -- not their effects. See Opp'n at 17.

The Supreme Court has held that the Sherman Act does not apply to "the business [of] giving exhibitions of base ball[sic]." Federal Baseball Club of Balt. v. Nat'l League of Pro. Base Ball Clubs, 259 U.S. 200, 208 (1922). The instant case raises questions about the scope of the so called "business of baseball" exemption and its application to state law. See Cangrejeros de Santurce Baseball Club, LLC, 146 F.4th at 20. The First Circuit answered these questions through analysis of the United States Supreme Court case Flood v. Kuhn:

> As this passage shows, the Supreme Court in Flood favorably quoted the conclusion that the court of appeals in that case had reached based on its Commerce Clause analysis: "[A]s the burden on interstate commerce outweighs the states' interests in regulating baseball's reserve system, the Commerce Clause precludes the application here of state antitrust law." Id. (first alteration in original) (quoting Flood, 443 F.2d at 268). Specifically, the court of appeals had explained that, with respect to the National and American Leagues that form MLB, "each league extends over many states, and . . . if state regulation were permissible, the internal structure of the leagues would require compliance with the strictest state antitrust standard." Flood, 443 F.2d at 268.

> The court of appeals in Flood further noted that "the clubs composing the Leagues are in different cities and, for the most part, in different states" and that "the clubs cross state lines in order to make the [exhibitions] possible." Id. at 265-66. And the court of appeals in Flood concluded that "[t]he consequent extra-territorial effect of necessary compliance [with state regulation] would be considerably more far-reaching than that in Southern Pacific Co. v. Arizona," Flood, 443 F.2d at 268, which was a case in which the Supreme Court had ruled that the extra-territorial effects of state regulation were impermissible under the Commerce Clause, [Southern Pac. Co. v. Arizona, 325 U.S. 761, 774-75, 65 S. Ct. 1515, 89 L. Ed (1945)].

Cangrejeros de Santurce Baseball Club, LLC, 146 F.4th at 20.

After an analysis of the instant case, the First Circuit concluded that:

> In this case, those Puerto Rico laws would be applied to a professional baseball league that -- unlike the interstate MLB -- has franchises that are located solely within Puerto Rico and thus that does not "extend[] over many states," 443 F.2d at 268. Flood, however, does not make clear whether state antitrust regulation of a league operating within a state or territory could be said to impose an impermissible burden on interstate commerce.

Id. at 23. The First Circuit thus remanded the case so that this Court may consider "whether those claims are precluded by the Commerce Clause." Id.

The United States Constitution provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce among the several States." U.S. Const. art. I, § 8, cl. 3.

> Although the [Commerce] Clause is framed as a positive grant of power to Congress, the Supreme Court of the United States has consistently held this language to

> contain a further, negative command, known as the [D]ormant Commerce Clause, prohibiting certain state [regulations] even when Congress has failed to legislate on the subject.

Rhode Island Truck Ctr., LLC v. Daimler Trucks N. Am., LLC, 180 F.4th 365, 372 (1st Cir. 2026) (quotations and citations omitted).

The Supreme Court's Dormant Commerce Clause precedents rest upon two primary principles. See id. The first holds out that "state regulations may not discriminate against interstate commerce, either in purpose or effect." Id. (quotations and citations omitted). Such discrimination would subject the regulation to "a virtually **per se** rule of invalidity." Id. (quotations and citations omitted) (emphasis added). The second holds out that "even a facially neutral state law may be struck down if the 'burden' it imposes on interstate commerce is 'clearly excessive in relation to [its] putative local benefits.'" Id. (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)). The test as set forth in Pike governs the impermissible burden on interstate commerce that the First Circuit mandated the Court consider.

In Pike, the Supreme Court set out the general rule for impermissible burden:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on

> interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. [Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 443 (1960)]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

Pike, 397 U.S. at 142.

As an initial matter, the issue of whether a statute, when applied, burdens interstate commerce cannot be resolved as matter of law. See Pharmaceutical Rsch. & Mfrs. of Am. v. Concannon, 249 F.3d 66 (1st Cir. 2001), aff'd sub nom. Pharmaceutical Rsch. & Mfrs. of Am. v. Walsh, 538 U.S. 644 (2003).

Additionally, the facts alleged do not indicate that the Commerce Clause precludes counts III and IV. Neither of the parties, nor the First Circuit, argue that Puerto Rico's antitrust law discriminates against interstate commerce. Thus, the pertinent question is whether the facially neutral anti-trust laws in Puerto Rico impermissibly burden interstate commerce when applied to the League.

The League argues that the relevant conduct, as pled, alleges interstate and international operations, such as merchandise sales, broadcasts, interstate and international player and coach movement, Caribbean Series participation, and

relationships with winter baseball structures involving Major League Baseball ("MLB"). See Mot. J. Plead. at 9.

The Plaintiffs argue that because the League and teams operate only within Puerto Rico, and the alleged conspiracy only restrains trade within Puerto Rico, no other state's interests are implicated. See Opp'n at 16. They argue that under the First Circuit's rule, the location of the teams, not their "ancillary activities or relationships" controls the instant Commerce Clause analysis. Id.

At the pleading stage, the Court must only decide whether the Plaintiffs have alleged facts that indicate the burden on interstate commerce is not clearly excessive, in relation to the putative local benefits.

The Plaintiffs have pled that the entirety of the League exists within a single territory; that the League agreement with MLB expressly states that the League is not an affiliate of MLB; that the teams within the League compete off the field in economic competition (including merchandise sales, radio, and streaming broadcast rights agreements). See Sec. Amend. Compl. ¶¶ 1, 31, 32. The Plaintiffs also allege that Axon, while investor-operator of the Cangrejeros de Santurce professional baseball team:

> funded production costs to broadcast all League games on the Fox Sports Network in the continental United States to reach fans of the Cangrejeros Franchise and the League

> in the United States market, and organized a private merchandising agreement with Lids Sports, to enable the Cangrejeros Franchise to not just sell its merchandise in Puerto Rico, but throughout the continental United States as well.

Id. ¶ 45.

The intra-territorial nature of the League is of significant weight in the balancing test. That the League exists solely within Puerto Rico, and does not conduct exhibition games or the like elsewhere in the United States, weighs against a clearly excessive burden on interstate commerce. Cf., e.g. Robertson v. National Basketball Ass'n, 389 F. Supp. 867, 880-881 (S.D.N.Y. 1975) (holding that the National Basketball Association involved "substantial volumes of interstate trade and commerce" where it had "18 teams operating in 18 home cities").

As discussed by the Massachusetts District Court, the Dormant Commerce Clause does not preclude a state from regulating the distribution, within its borders, of a product that travels in interstate commerce. See Zogenix, Inc. v. Baker, No. 14-11689, 2015 WL 1206354 (D. Mass. 2015) (Zobel, J.); see also Cf. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 128 (1978) ("[W]e cannot adopt appellants' novel suggestion that because the economic market for petroleum products is nationwide, no State has the power to regulate the retail marketing of gas."). This cuts against the weight of

merchandising and broadcasting in evaluating a clearly excessive burden on interstate commerce.

At this stage and on this record, where it is alleged that the League has all franchise locations within a single territory, and the scope of its inter-territorial commerce consists of broadcasting and merchandising, the Court cannot rule that the burden imposed by applying Puerto Rico's antitrust law to the regulation of the League, and its ancillary interstate commerce, is clearly excessive. Accordingly, the Court DENIES the League's motion for judgment on the pleadings as to counts III and IV.

## III. CONCLUSION

For the foregoing reasons, this Court DENIES the League's motion for judgment on the pleadings, ECF No. 144, in its entirety as to the remaining counts (counts III-VII). Counts I-II are not at issue in this motion, and have been previously decided by the Court.

**SO ORDERED.**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.